**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DIAMOND LIFE LIGHTING MFG (HK) LTD.,<br><br>Plaintiff,<br><br>v.<br><br>PICASSO LIGHTING, INC., et al.,<br><br>Defendants. | Civil Action No.: 10-161(PGS)<br><br>**OPINION** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on two motions: (1) Plaintiff Diamond Life Lighting MFG (HK) LTD.'s ("Plaintiff") motion to dismiss Defendants Picasso Lighting, Inc., et al.'s ("Defendants") amended counterclaims and to strike one of Defendants' affirmative defenses ("Plaintiff's Motion"); and (2) Defendants' cross motion for leave to file a second amended answer and counterclaim ("Defendants' Cross-Motion"). On January 12, 2010, Plaintiff filed a complaint against Defendants ("Plaintiff's Complaint"). On April 1, 2010, Defendants filed an amended answer and counterclaim ("Defendants' Amended Answer and Counterclaim") in which Defendants alleged seven causes of action: (1) breach of contract; (2) fraud; (3) violation of the New Jersey Consumer Fraud Act ("NJCFA"); (4) breach of the implied covenant of good faith and fair dealing;

(5) negligence; (6) unjust enrichment; and (7) conversion[1].

For the reasons set forth below, this Court partially grants Plaintiff's Motion, and denies Defendants' Cross-Motion.

## I. **Statement of the Facts**

Plaintiff is a manufacturer of lighting products and fixtures. Defendants sell lighting products and fixtures as wholesalers and to the general public. Defendants ordered a line of products from Plaintiff. According to Defendants, in 2006, Plaintiff breached their agreements by delivering Defendants' orders "on a tardy basis . . . ." In addition, Defendants contend that Plaintiff also delivered orders that were not manufactured as Defendants specified and/or used materials of a lesser quality, and/or took actions that were otherwise in breach of the agreements between Plaintiff and Defendants. Defendants contend that Plaintiff's actions damaged Defendants.

Defendants additionally contend that Plaintiff defrauded Defendants by delivering inadequate lighting fixtures to Defendants. Defendants assert that in 2004, Defendants ordered solid brass lighting fixtures from Plaintiff. Despite this specific order, however, Defendants maintain that in April of 2007, Defendants learned that the lighting fixtures that Plaintiff had been shipping to Defendants for the past three years were not solid brass, but rather were made of steel.

Similarly, Defendants also allege that Plaintiff shipped fixtures to Defendants that were not made of the 24 karat gold filling as had been ordered, but, on the contrary, were made using vacuum

---

1

Although Defendants' Amended Answer and Counterclaim alleges these seven causes of action, Plaintiff's Motion addresses only four of the causes of action set forth in Defendants' Amended Answer and Counterclaim: (1) breach of contract; (2) fraud; (3) violation of the NJCFA; and (4) breach of the implied covenant of good faith and fair dealing. As a result, this Court need only address the facts and law that are relevant to these four causes of action.

gold. According to Defendants, Plaintiff had represented to Defendants that Plaintiff used 24 karat gold in manufacturing these orders. Defendants contend that these alleged misrepresentations damaged Defendants.

## II. Legal Discussion

Standard on a Motion to Dismiss

When evaluating a motion to dismiss for failure to state a claim, the court is required to accept as true all allegations in the pleading and all reasonable inferences that can be drawn therefrom, and to view such allegations and inferences in the light most favorable to the non-moving party. *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). A cause of action should be dismissed only if the alleged facts, taken as true, fail to state a claim. *See Iqbal*, 129 S. Ct. at 1950.

While a court will accept well-pled allegations as true for the purposes of the motion to dismiss for failure to state a claim, a court will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). On the contrary, "[t]he pleader is required to 'set forth sufficient information to outline the elements of [its] claim or to permit inferences to be drawn that these elements exist'." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

Defendants' First Cause of Action for Breach of Contract Is Not Dismissed.

A breach of contract arises where: (1) a contract exists between the parties; (2) a party breaches the contract; (3) damages flow from the breach of the contract; and (4) the party alleging

the breach of the contract satisfactorily performs its own obligations under the contract. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citation omitted).

Plaintiff contends that Defendants' Amended Answer and Counterclaim "completely fail[s] to allege the existence of a legally valid contract between [Plaintiff] and [Defendants]." Plaintiff additionally asserts that "Defendants do not allege the existence of an agreement . . . ." This Court is not persuaded by Plaintiff's arguments. A review of Defendants' Amended Answer and Counterclaim reveals that Defendants adequately pled the existence of several contracts between Plaintiff and Defendants. Not only did Defendants assert that a "long standing business relationship" existed between Plaintiff and Defendants, but Defendants pled that there existed "agreements" between the parties on several occasions.

Plaintiff's argument that Defendants failed to plead "essential terms of [the] agreement[s]" is equally unavailing. At this stage in the litigation, Defendants are not required to "allege specific provisions [of the contracts]." *See Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, 2007 WL 1756027, at * 5 n.4 (D. N.J. June 18, 2007) (internal quotations and citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir.2005) ("[A] plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts."). Rather, Defendants' responsibility is only to "provide fair notice of what [Defendants'] claim[s] [are] and the grounds upon which [they] rest[]." *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002) (internal quotations and citation omitted).

Despite Plaintiff's arguments, this Court is convinced that Plaintiff can, in fact, "decipher[] the factual basis of [Defendants'] alleged breach claim[s] . . . ." Defendants' assertion that Plaintiff breached the agreements by delivering the orders "on a tardy basis" signifies that Plaintiff and

Defendants had agreed upon a time for performance to come due under the agreements. Similarly, Defendants contend that Plaintiff delivered orders that "were not manufactured as specified" and/or contained "materials of lesser quality" than requested. Such statements clearly indicate two criteria allegedly included in the contractual agreements: (1) the manufacturing specifications of the orders; and (2) the quality of material to be used in the orders.

Finally, Plaintiff contends that Defendants cannot maintain Defendants' breach of contract claim because Defendants failed to "perform[] their own contractual obligations" by not paying Plaintiff the sums of money to which Plaintiff is entitled. This argument is not persuasive. Defendants have never conceded that they breached the agreements with Plaintiff. On the contrary, Defendants merely "admit [that Defendants] ow[e] [Plaintiff] money due to orders which are subject to set off for sums owed by [Plaintiff] to [Defendants]."

Defendants' conduct does not appear grave enough to constitute a material breach of an agreement. Plaintiff would be excused from its performance under the contact only if Defendants' breach was "material" in nature. *See generally Giumarra v. Harrington Heights,* 33 N.J. Super. 178, 190-91 (App. Div. 1954); *see also Tyro Indus., Inc. v. Trevose Constr. Co., Inc.*, 737 F. Supp. 856, 864 (E.D. Pa. 1990) ("[I]t is only when the breach constitutes a material failure that the nonbreaching party is discharged from all further obligations under the contract . . . ."). Where there are a continuous string of contractual agreements, such as those at issue here, a failure to pay for certain orders requires the court to determine whether the breach is sufficiently material such that a party can forego fulling its obligations under the contract, or, on the contrary, whether the failure is merely a minor breach that would justify only the party's right to sue for damages. *See generally E.I. Dupont De Nemours Powder Co. v. United Zinc & Chem. Co.*, 85 N.J.L. 416, 419 (Sup. Ct. 1914).

Considering the "long standing business relationship" that Defendants contend that they maintained with Plaintiff, it seems likely that Plaintiff would have acknowledged that - on certain occasions - Defendants would owe Plaintiff certain amounts of money for orders previously delivered. As a result, because it does not appear that Defendants' actions fell outside the scope of normal business practice, this Court does not believe that Plaintiff has proven that Defendants failed to satisfy Defendants' obligations under the agreements.

Because Defendants adequately pled Defendants' breach of contract claim, this Court will not dismiss Defendants' breach of contract claim.

Defendants' Second Cause of Action for Fraud Is Not Dismissed.

A party sets forth a viable claim for fraud where the claiming party alleges that: (1) the other party made a material misrepresentation of fact; (2) with knowledge of the falsity of the fact; (3) with the intent that the claiming party would rely upon the misrepresentation; (4) resulting in reliance upon the misrepresentation; and (5) the reliance detrimentally affected the claiming party. *See Jewish Ctr. of Sussex County v. Whale,* 86 N.J. 619, 624 (1981). Moreover, a fraud claim is subject to more stringent pleading requirements: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. Proc. 9(b). As a result, a party sets forth a fraud claim only where the party outlines the "who, what, when, where, and how of the events [that comprise the fraud claim]." *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007) (internal quotation and citation omitted).

Defendants have adequately pled Defendants' fraud claim against Plaintiff. Specifically, Defendants have satisfactorily alleged the critical details - the "who, what, when, where, and how" - of Plaintiff's allegedly fraudulent actions. Defendants asserted the "who" behind the alleged fraud

(e.g. "[b]ased upon Plaintiff's representations . . . ."). Defendants specified "what" constituted the subject matter of the alleged fraud: lighting fixtures that did not adhere to specifications. In addition, Defendants specified that these representations occurred "sometime in the calendar year of 2004 and continuing until 2007 . . . ."

Moreover, although Defendants do not specifically reference "where" Plaintiff misrepresented the critical facts about the fixtures, it is likely that basic discovery will reveal that Plaintiff made such representations (in the form of telephone calls, e-mails, letters, etc...) from Plaintiff's manufacturing facility. Finally, Defendants have established "how" exactly Defendants contend that Plaintiff's fraud operated. In particular, Defendants pled that Plaintiff defrauded Defendants by misrepresenting the quality of fixtures Plaintiff would ship to Defendants, and by substituting steel and vacuum gold fixtures in place of the solid brass and 24 karat gold fixtures that Defendants requested.

<u>Defendants' Third Cause of Action for a Violation of the NJCFA Is Dismissed.</u>

The NJCFA provides in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. 56:8-2. More specifically, a claimant states a viable NJCFA claim where the claimant alleges: (1) unlawful conduct by an opposing party; (2) an ascertainable loss by the claiming party; and (3) a causal relationship that exists between the unlawful conduct and the ascertainable loss. *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D. N.J. 2009). A violation of the NJCFA

arises where "the business practice in question [is] misleading and stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer, and thus most clearly and directly involve a matter of legitimate public concern." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995)[2].

Plaintiff contends that Defendants cannot maintain a claim under the NJCFA because Defendants are not "consumers." The NJCFA does not specifically define what constitutes a consumer. *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 508 (D. N.J. 1999); *see also* N.J.S.A. § 56:8-1 ("Definitions"). Courts have differed in determining whether business entities can qualify as consumers under the NJCFA. For example, in *BOC Group, Inc.* - one of the cases relied upon by Plaintiff - the court ruled that a corporate plaintiff did not qualify as a consumer under the NJCFA. *BOC Group, Inc.,* 251 N.J. Super. at 281. *BOC Group, Inc.* involved a dispute between an owner of a plant who intended to manufacture "needle coke," a material used to produce graphite electrodes, and various companies who sought to produce high-quality needle coke from pyrolysis tars. *Id.* at 273-276. Acknowledging that this case "[was] clearly not the type of situation contemplated by the [NJCFA]," the court held that plaintiff did not qualify as a consumer under the NJCFA. *Id.* at 280. The court explained its rationale: "The [] parties involved in this case are large corporations who negotiated for years before entering into a multi-million dollar contract for the sale of a design and for services collateral thereto . . . [and] the plaintiff in this case knew it was

---

2

*See also BOC Grp., Inc. v. Lummus Crest, Inc.,* 251 N.J. Super. 271, 278 (Law Div. 1990) ("In enacting the [NJCFA], the legislative concern was over sharp practices and dealings in the marketing and mass distribution of consumer goods and the adverse effect which these practices would have upon the disadvantaged and poorly educated people who are least able to cope with unethical solicitors.") (citations omitted).

purchasing a new, state of the art idea which was still in an experimental phase." *Id.* at 280-281. As a result of the sophistication of the parties, the court observed: "This is certainly not the case of a seller taking advantage of a naive purchaser." *Id.* at 280.

In opposition to the cases cited by Plaintiff, the cases relied upon by Defendants concluded that the claimants in those respective cases did, in fact, qualify as consumers under the NJCFA. For example, in one case cited by Defendants, the Supreme Court of New Jersey held that a commercial purchaser of a yacht qualified as a consumer under the NJCFA. *Perth Amboy Iron Works, Inc. v. Am. Home Assurance Co.*, 226 N.J. Super. 200, 211 (App. Div. 1988) (holding that the NJCFA can "encompass the acts of remote suppliers . . . whose products are passed on to a buyer and whose representations are made to or intended to be conveyed to the buyer"). Similarly, a court held that the NJCFA applied where a business brought an action against a computer manufacturer for the computer manufacturer's allegedly fraudulent discontinuance of a computer line. *See Hundred East Credit Corp.v. Eric Schuster Corp.*, 212 N.J. Super. 350, 355-57 (App. Div. 1986). In *Hundred East Credit Corp.*, a computer manufacturer sold disc units and disc drives to businesses without notifying the businesses that the computers that used these accessories would soon be discontinued. *Id.* at 353. In holding that a business "can be, and frequently is, a consumer in the ordinary meaning of that term," the court observed that commercial consumers are occasionally subject to predatory business practices:

> Business entities, like individual consumers, cover a wide range. Some are poor, some wealthy; some are naive, some sophisticated; some are required to submit, some are able to dominate . . . Unlawful practices thus can victimize business entities as well as individual consumers.

*Id.* at 355-57. Because certain businesses are less sophisticated than others, the court found that "to exclude business entities from any protection of the [NJCFA] would contravene its manifest purpose

as well as its unambiguous language." *Id.* at 357.

Although this Court recognizes that certain business entities qualify as consumers under the NJCFA, this Court holds that Defendants are not consumers under the NJCFA for two specific reasons. First, Defendants' unique business expertise provides that they should not be afforded protection under the NJCFA. Unlike the "poor" and "naive"[3] customers referenced by the *Hundred East Credit Corp.* court, the customers here - Defendants - are involved in a business transaction in which Defendants allege to have suffered $2.5 million dollars in harm. 212 N.J. Super. at 356. As a result, this Court finds that the instant factual scenario is more akin to that presented in *BOC Group, Inc.*, where the court held that a claimant who "enter[s] into a multi-million dollar contract" does not qualify as a consumer under the NJCFA. 251 N.J. Super. at 280. The large sum of money involved in this business transaction signifies that Defendants have more business acumen than the average consumers, and thus do not qualify for protection under the NJCFA.

Moreover, a literal interpretation of the term "consumer" - as has been applied by various courts[4] - dictates that Defendants are not consumers under the NJCFA. The traditional definition of a consumer is "one who uses (economic) goods, and *so diminishes or destroys their utilities*." *Hundred East Credit Corp.*, 212 N.J. Super. at 355 (citing *Webster's New International Dictionary* (2d edition)) (emphasis added). Under this definition of a consumer, it is evident that Defendants

---

3 "[T]he strongest case for relief [under the NJCFA] . . . is presented by *the poor, the naive* and the uneducated consumers who have yielded unwittingly to [] high pressure sales tactics." *Kugler v. Romain*, 58 N.J. 522, 538 (1971) (emphasis added).

4 The *Hundred East Credit Corp.* court provided a list of courts that have used this definition in statutory interpretation. 212 N.J. Super. at 355.

are not afforded relief under the NJCFA. Unlike the buyer of the yacht in *Perth Amboy Iron Works, Inc.* or the purchaser of the computer hardware in *Hundred East Credit Corp.*, Defendants never intended to "use" the ordered goods in a way that would "diminish or destroy" their value. On the contrary, Defendants sought to preserve all value possible in the lighting fixtures so that Defendants could ultimately "sell[] [the] products on a wholesale level and to the general public . . . ." Because Defendants never intended to use the lighting fixtures in a traditional way in which a consumer "uses" a product, this Court rules that Defendants are not consumers under the NJCFA.

Because Defendants do not qualify as consumers, Defendants' counterclaim for a violation of the NJCFA is dismissed.[5]

Defendants' Fourth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Not Dismissed.

Every contract holds an implied covenant of good faith and fair dealing. *Palisades Props., Inc. v. Brunetti*, 44 N.J. 117, 130 (1965) (citation omitted). More specifically, every contract possesses "an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." *Ibid.* (internal quotations and citation omitted). In order to survive a motion to dismiss a claimant's

---

5 Furthermore, Defendants are denied the opportunity to set forth a NJCFA claim in any second amended answer and counterclaim. As Plaintiff accurately points out, "Defendants' CFA claim in the proposed Second Amended Counterclaims is identical to [Defendants'] CFA claim in [Defendants' Amended Answer and Counterclaim]." A court may deny a claimant's request to amend a pleading where any such amendment would prove futile. *Lorensz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citation omitted). Defendants' inability to proffer any new allegations with respect to Defendants' NJCFA claim in Defendants' proposed second amended answer and counterclaim signifies that any amendment would be futile. As a result, Defendants' Cross-Motion is denied with respect to Defendants' NJCFA claim.

breach of implied covenant claim, the claimant must "allege the existence of a contractual relationship" between the claimant and the opposing party. *Space v. BRPM Towing Serv., Inc.*, 2007 WL 4570157, at *6 (D. N.J. Dec. 21, 2007).

Plaintiff's entire argument for the dismissal of Defendants' breach of the implied covenant claim is premised upon the assertion that Defendants have not pled the existence of a contract. As this Court stated above, however, this Court is convinced that Defendants have adequately pled the existence of a contractual relationship between Plaintiff and Defendants. As a result, Defendants' claim for breach of the implied covenant of good faith and fair dealing is not dismissed.

Defendants' Second Affirmative Defense for Lack of Subject Matter Jurisdiction and Lack of Personal Jurisdiction Is Stricken.

Defendants' second affirmative defense listed in Defendants' Amended Answer and Counterclaim states that "[t]his Court lacks subject matter jurisdiction and in personam jurisdiction." Both these defenses shall be stricken. First, Defendants waived any subject matter jurisdiction defense by "admitting" in Defendants' Amended Answer and Counterclaim that this Court maintains subject matter jurisdiction over this dispute. Second, Defendants specifically waived their personal jurisdiction defense when they signed a March 3, 2010 consent order that explicitly stated "that any defenses based upon lack of *in personam* jurisdiction are hereby waived . . . ." (Consent Order Extending Time to Answer, Mar. 3, 2010, ECF No. 10).

Because Defendants specifically waived both their subject matter jurisdiction and personal jurisdiction defenses, Defendants' second affirmative defense shall be stricken from Defendants' Amended Answer and Counterclaim.

## III. Conclusion

For the reasons set forth above, this Court partially grants Plaintiff's Motion, and denies

Defendants' Cross-Motion. As a result of this ruling, Defendants' first count for breach of contract, second count for fraud, and fourth count for breach of the implied covenant of good faith and fair dealing are not dismissed. Defendants' third count for a violation of the NJCFA is dismissed. Moreover, Defendants' Cross-Motion is denied. In addition, this court strikes Defendants' second affirmative defense from Defendants' Amended Answer and Counterclaim.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

December 14, 2010