<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DIAMOND LIFE LIGHTING MFG (HK) LTD., <br><br> Plaintiff, <br><br> v. <br><br> PICASSO LIGHTING, INC., et al., <br><br> Defendants. | Civil Action No.: 10-161(PGS) <br><br><br> <u>**MEMORANDUM AND ORDER**</u> |

This matter comes before the Court on Plaintiff Diamond Life Lighting MFG's motion for summary judgment.

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists only if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Such a fact is considered material only if the fact may affect the outcome of the litigation based upon the substantive law.  *Ibid.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

After a party files a motion for summary judgment, along with supporting papers, the non-moving party "must produce specific facts showing that there is a genuine issue for trial." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109 (3d Cir. 1985) (citation omitted). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (*citing* Fed. R. Civ. P. 56(e)).

Facts

Diamond Life is in the business of manufacturing a wide variety of lighting products, including chandeliers and other types of lighting fixtures.

Picasso is in the business of designing and selling on a wholesale basis a wide variety of lighting products, including chandeliers and other types of lighting fixtures.

Commencing in the late 1990's Picasso began using Diamond Life as its manufacturer of lighting products.

Each order was filled by Picasso sending Diamond Life a prototype of the lighting product to be built. Diamond Life would then build a production prototype allegedly using the same materials and the identical specifications and dimensions as the sample sent by Picasso. The purpose of this was to demonstrate to Picasso exactly what the manufactured product would look like, and the materials from which it was made. Diamond Life would then send the production prototype to Picasso for its approval.

Upon receiving Picasso's approval, Diamond Life would ascertain the cost of manufacturing each item and would thereafter communicate a cost to Picasso. If Picasso agreed with the price (which sometimes involved negotiation of the price), a purchase order was transmitted from Picasso to Diamond Life for the number of units desired.

2

On August 25, 2005, Diamond Life and Picasso entered into a written agreement (the "Agreement") dated September 30, 2005 whereby Diamond Life agreed to extend Picasso credit of up to three hundred thousand dollars ($300,000) toward the purchase of goods manufactured by Diamond Life (Wong Dec. Para. 9). It was thereafter extended to $700,000.

Diamond Life contends that it is owed more than $800,000; but Picasso believes that there should be a set-off due to the following disputed facts.

As set forth above, Diamond Life contends that every product "ever made conformed exactly to the materials and specifications which were ordered by Picasso." Picasso sees it differently. It denied the above and alleges that although Diamond Life credited Picasso $85,000.00 because it was using inferior materials, thereafter, "Picasso discovered that aside from the brass v. steel issue, that Diamond Life had been using vacuum gold instead of the 24k gold plating, thereby deceiving Picasso"; and "plaintiff was manufacturing its goods with inferior material, such as substituting steel where brass was sacrificed, and using vacuum gold plating instead of 24K gold plaiting on at least three of Picasso's product lines."

Another fact issue revolves around the credit agreement wherein Diamond Life extended $700,000 of credit to Picasso on fixtures it produced. Picasso alleges that in breach of the credit agreement, Diamond Life would retain fixtures until a payment was made. Despite the credit arrangement's ceiling, this retention of fixtures often caused Picasso to delay delivery to its customers which resulted in a significant loss of business. Diamond life contends that it only retained fixtures when the balance owed by Picasso exceeded $700,000.00.

Both of these issues present factual disputes which a jury must resolve.

In conclusion, summary judgment is denied.

IT IS on this 14th day of September, 2011

ORDERED that Plaintiff's motion for summary judgment is denied.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.
